UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| FORUM FOR EQUALITY LOUISIANA, INC., | * | CIVIL ACTION |
| JACQUELINE M. BRETTNER, | * | |
| M. LAUREN BRETTNER, | * | NO. |
| NICHOLAS J. VAN SICKELS, | * | |
| ANDREW S. BOND, | * | SECTION |
| HENRY LAMBERT, | * | |
| R. CAREY BOND, | * | JUDGE |
| L. HAVARD SCOTT, III, and | * | |
| SERGIO MARCH PRIETO, | * | MAGISTRATE JUDGE |
| | * | |
| | * | |
| Plaintiffs, | * | |
| | * | |
| v. | * | |
| | * | |
| TIM BARFIELD, in his official capacity as | * | |
| Secretary of the Louisiana Department of Revenue, | * | |
| and DEVIN GEORGE, in his official capacity as | * | |
| Louisiana State Registrar, | * | |
| | * | |
| Defendants. | * | |

**********************************************

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1.     Plaintiffs bring this action to challenge the constitutionality of Article XII, Section 15 of the Louisiana Constitution (the "Louisiana DOMA Amendment") and Article 3520(B) of the Louisiana Civil Code.  These laws are collectively referred to hereafter as the "Louisiana Anti-Recognition Laws."

2.     The Louisiana Anti-Recognition Laws prohibit Louisiana officials from recognizing the lawful marriages of same-sex couples entered into in another jurisdiction where same-sex marriages may be legally celebrated.  The Louisiana Anti-Recognition Laws exempt the marriages of gay, lesbian, and bisexual Louisiana residents from Louisiana's long-standing

- 1 -

rule that a marriage that is valid where it was celebrated will be considered to be valid in Louisiana.

3.      Plaintiffs bring this action pursuant to 42 U.S.C. § 1983 for declaratory and injunctive relief because the Louisiana Anti-Recognition Laws violate Plaintiffs' rights of equal protection and due process secured by the Fourteenth Amendment of the United States Constitution.   As the Louisiana Anti-Recognition Laws have been applied by Defendant Tim Barfield, Secretary of the Louisiana Department of Revenue, they also violate Plaintiffs' First Amendment right of free speech.

4.      Plaintiffs consist of four married, same-sex couples and a nonprofit organization that advocates for the rights of gay, lesbian, bisexual, and transgender Louisiana residents.   Each couple is married under the law of another state or the District of Columbia.   These marriages would be recognized by Defendants under Louisiana law but for the fact that the spouses are the same sex.

5.      The Louisiana Anti-Recognition Laws lack a rational basis related to a legitimate governmental purpose.   They "instruct[] [state] officials, and indeed all persons with whom same-sex couples interact, including their own children, that their marriage is less worthy than the marriages of others." *United States v. Windsor,* 133 S. Ct. 2675, 2696.   The laws have no legitimate purpose that "overcomes the purpose and effect to disparage and injure" same-sex couples. *Id.*

6.      Louisiana's refusal to recognize same-sex marriages undermines the rights, protections, and financial security of same-sex couples and their children.   Same-sex couples in Louisiana cannot enjoy the legal rights, protections, and responsibilities of marriage that their opposite-sex counterparts take for granted.   For example, the Louisiana State Registrar refuses to

1144938v8

issue a birth certificate identifying both members of a same-sex couple as parents when a child is born of the marriage. The Secretary of the Louisiana Department of Revenue rejects joint tax returns filed by married same-sex couples, despite the fact that the spouses may file a joint federal income tax return and are required to identify on the federal return that they are married. The Secretary will accept a joint return from a similarly situated opposite-sex couple, even if the opposite-sex couple's marriage was of a type that could not be legally celebrated in Louisiana. Louisiana's refusal to recognize the valid marriages of same-sex couples does not promote any legitimate policy objective and serves only to demean and harm the same-sex spouses and their children.

7. Further, the Secretary's requirement that the spouses of a same-sex marriage must sign state income tax returns that deny their marital status is an unconstitutional coercion of speech.

8. Plaintiffs seek: (a) a declaration that the Louisiana Anti-Recognition Laws are unconstitutional, (b) an injunction against Defendants prohibiting them from enforcing the Louisiana Anti-Recognition Laws and requiring them to fully recognize the marriages of Plaintiffs, and (c) an award of attorneys' fees and costs in accordance with 42 U.S.C. § 1988.

## PARTIES

9. Plaintiff FORUM FOR EQUALITY LOUISIANA, INC. (the "Forum") is a Louisiana nonprofit corporation with its primary office in New Orleans, Louisiana. The Forum is a social welfare organization within the meaning of Section 501(c)(4) of the Internal Revenue Code.

10. In accordance with its bylaws, the Forum is a membership organization with dues-paying members. Each of the other Plaintiffs is a member of the Forum. The membership of the Forum also includes other individuals who live in Louisiana, who are married to a person

- 3 -

of the same sex, and who would have standing to sue in their own right.  These other individuals are hereafter referred to as the "Married Forum Members."

11.     The mission of the Forum is to promote and sustain the equality of gay, lesbian, bisexual, and transgender persons in Louisiana through the establishment of fair and equitable laws.  The claims asserted in this litigation are germane to the Forum's purpose.

12.     Plaintiffs JACQUELINE M. BRETTNER ("Jackie") and M. LAUREN BRETTNER ("Lauren") are Louisiana citizens who reside in New Orleans, Louisiana.  Jackie and Lauren have been in a long-term, committed relationship since 2011.  Jackie works as an attorney in a New Orleans law firm.  Lauren is a nurse at a local hospital.

13.     After dating for about a year, Jackie and Lauren decided to marry.  Jackie and Lauren felt that they could not imagine their lives without each other.  On Valentine's Day 2012, Jackie and Lauren obtained a marriage license and celebrated their marriage in New York, where same-sex marriages may be legally celebrated.

14.     Like many other committed, long-term couples, Jackie and Lauren decided to have a baby.  Their daughter was born in April 2013.  Lauren carried the baby to term and gave birth.

15.     At the time of their baby's birth, Jackie and Lauren informed the hospital that they were legally married and asked that both of them be listed as parents of the child on the birth certificate.  The hospital denied their request stating that the Louisiana State Registrar would not issue a birth certificate identifying Jackie as one of the baby's parents, even though Jackie and Lauren were married at the time of the birth, because Jackie and Lauren were of the same sex.

16.     The baby's birth certificate omits Jackie and lists only Lauren as a parent of the baby.

- 4 -

17.     If Jackie were a man rather than a woman, the State Registrar would have recognized Jackie and Lauren's New York marriage and issued a birth certificate identifying Jackie as the baby's parent without further inquiry into whether Jackie had a biological connection to the baby.

18.     Because their marriage is not recognized in Louisiana, Jackie and Lauren have incurred additional expenses to protect their family that would otherwise be unnecessary.  For example, they have commissioned living wills, advanced directives, and other documents to try to protect their family if tragedy were to strike.  They understand, however, that these documents do not afford them all the protections that automatically come with marriage, and the documents could be ignored or challenged.  For example, Jackie, Lauren, and their baby were recently traveling internationally, and they were questioned by federal security officials at the airport because they were unable to produce a birth certificate listing both of them as the parents of the baby.

19.     Plaintiffs NICHOLAS J. VAN SICKELS ("Nick") and ANDREW S. BOND ("Andrew") are Louisiana citizens who reside in New Orleans, Louisiana.  Nick and Andrew have been in a committed relationship since 2003.  Nick is a physician at a New Orleans hospital and works at a clinic in Alexandria, Louisiana.  Andrew teaches history at a local high school.

20.     Nick moved to New Orleans in 2005 to complete his medical residency.  After Hurricane Katrina, Nick evacuated to Houston, Texas, and spent time treating evacuees housed at the Astrodome.  He returned to New Orleans in January 2006, and Andrew moved to New Orleans to be with him later that year.  Andrew obtained a master's degree in U.S. history from Tulane University.

21.     In 2008, Andrew and Nick became engaged.  However, they decided to wait to marry until their marriage would be legally recognized.  In August 2013, after the Supreme Court decision in *Windsor v. United States,* Nick and Andrew obtained a marriage license and celebrated their marriage in the District of Columbia, where same-sex couples may legally marry.

22.     Like many other long-term, committed couples, Nick and Andrew decided to raise a family by adopting a child.  Because Louisiana prohibits unmarried couples from jointly adopting (*see, e.g.,* La. Child. Code arts. 1198, 1243) and also prohibits same-sex marriage, Nick and Andrew could not jointly adopt a child.  Thus, Nick, by himself, adopted their child in 2012.

23.     Though Nick is legally the sole parent of the child, Nick has executed a provisional custody by mandate in accordance with Louisiana law, La. R.S. 9:951 *et seq.*, that provides Andrew with a limited set of legal rights to care for their child.  However, the document must be re-executed annually.  In addition, if Nick died, Andrew could lose his rights to the child.  The provisional custody by mandate granted by Nick to Andrew would only be effective for 15 days in the event of Nick's death.  La. R.S. 9:952.  Thus, Nick and Andrew's family is harmed by Louisiana's refusal to recognize their marriage and the consequence that Andrew may not adopt their child.

24.     Plaintiffs HENRY LAMBERT ("Henry") and R. CAREY BOND ("Carey") are Louisiana citizens who reside in New Orleans, Louisiana.  Henry and Carey met in 1972 and have been in a long-term, committed relationship since 1974.  Henry and Carey co-own a real estate development firm that has renovated or constructed apartment buildings, condominiums, and hotels throughout greater New Orleans.  Carey is a licensed contractor and the projects that he has supervised have received numerous awards for historic preservation.  Henry formerly

- 6 -

served in the administration of New Orleans Mayor Moon Landrieu and as Director of the Vieux Carré Commission.  Henry is also a veteran, having served as an Army Captain of the 4th MP Company, 4th Infantry Division in the Vietnam War, for which he received the Bronze Star for Meritorious Achievement.

25.    Henry and Carey have lived together since 1978.  They currently reside in a condominium that they co-own.  In recent years, Henry has developed a heart condition that has required regular treatment, including surgery.  To secure the legal status of their relationship in case of either's illness or death and to solemnize their relationship in accordance with their personal religious beliefs, Henry and Carey decided to marry after more than thirty years together.

26.    In December 2011, they obtained a license and celebrated their marriage in New York, where same-sex couples are permitted to marry.  They married in a small gathering surrounded by their friends.

27.    Since they have married, Henry and Carey feel closer to each other than ever before. They feel that they can talk more freely to others about their relationship, and their friends and colleagues have been supportive.

28.    The State of Louisiana refuses to recognize the validity of Henry and Carey's New York marriage.  As discussed below, Henry and Carey jointly filed a Louisiana individual income tax return for tax year 2012 that identified them as married taxpayers, but employees of the Louisiana Department of Revenue refused to accept the return.

29.    Plaintiff L. HAVARD SCOTT, III ("Havard") is a Louisiana citizen who resides in Shreveport, Louisiana.  Plaintiff SERGIO MARCH PRIETO ("Sergio") is a citizen of Spain and legal U.S. permanent resident who resides in Shreveport, Louisiana.  Havard is an attorney

1144938v8

who practices in Shreveport.  He formerly worked as a partner at a large New Orleans-based law firm and in the mid-1990's opened and managed that firm's office in Miami, Florida, mainly representing cruise lines.  Havard and Sergio met in 1996 while Sergio was working as a singer and dancer in the theater performance on a cruise ship operated by one of Havard's clients. Sergio is also an actor who has appeared in movies filmed in the Shreveport area and in other parts of the country.   Havard and Sergio have lived together in a long-term, committed relationship since 1997.

30.    Havard and Sergio moved to Shreveport together in 2003 to care for Havard's aging parents, including Havard's mother who had been diagnosed with Alzheimer's disease.  In 2000, Havard and Sergio traveled to Vermont and entered into a civil union soon after Vermont's legislature permitted civil unions.   In 2010, after Vermont legalized marriage for same-sex couples, they returned to Vermont and celebrated their marriage.   Havard and Sergio married because they had already been together for more than a dozen years, planned on spending the remainder of their lives together, and desired to celebrate and solemnize their love and devotion to each other through the institution of marriage.

31.    Before the Supreme Court's announcement of the *Windsor* decision, Sergio received permission from the U.S. Citizenship and Immigration Services ("USCIS") to remain in the United States on a non-immigrant O-1 Visa based on his employment and a showing of significant achievement in the performing arts in his native country of Spain.  After *Windsor* was announced, USCIS announced that it would review petitions for permanent residency filed on behalf of a same-sex spouse in the same manner as those filed on behalf of an opposite-sex spouse.  Sergio applied to USCIS, his petition for permanent residency was approved, and Sergio

now has his Green Card to permanently reside in the United States based on his status as Havard's spouse.

32.    Despite the recognition of Havard and Sergio's marriage by federal immigration authorities, the State of Louisiana refuses to recognize the validity of their Vermont marriage. For example, as discussed below, the Louisiana Department of Revenue will not permit them to claim a married status for the purpose of state income taxes.   Like other same-sex couples, they also do not enjoy the benefits of marriage that arise under Louisiana state law.

33.    Jackie and Lauren, Nick and Andrew, Henry and Carey, Havard and Sergio, and the Married Forum Members are hereafter referred to collectively as the "Plaintiffs" or "Plaintiff Couples."

34.    Defendant TIM BARFIELD ("Secretary Barfield") is sued in his official capacity as Secretary of the Louisiana Department of Revenue.   In accordance with La. R.S. 36:453, Secretary Barfield is the executive officer vested by the State of Louisiana with responsibility for the policies of the Department of Revenue and for the administration, control, and operation of the functions, programs, and affairs of the department.   Secretary Barfield is a person within the meaning of 42 U.S.C. § 1983 and was acting under color of state law at all times relevant to this Complaint.

35.    After the Supreme Court announced its decision in *Windsor v. United States,* 570 U.S. 12 (2013), invalidating Section 3 of the Defense of Marriage Act, the IRS issued Revenue Ruling 2013-17.   The revenue ruling states that the IRS will treat same-sex couples, legally married in jurisdictions that recognize their marriages, as married for federal tax purposes regardless of whether the marriage would be legal in the couple's state of domicile.   The Plaintiff Couples and other Louisiana same-sex couples who have married in other jurisdictions plan to or

1144938v8

have already filed federal income tax returns as married taxpayers in accordance with the revenue ruling.

36.    On September 13, 2013, Secretary Barfield issued Revenue Information Bulletin No. 13-024 ("the Bulletin").   The Bulletin states that in accordance with Article XII, Section 15 of the Louisiana Constitution, the Louisiana Department of Revenue will not follow Revenue Ruling 2013-17 and will not recognize same-sex marriages that were legally entered when determining an individual's filing status for purposes of Louisiana state income taxes.

37.    Further, according to the Bulletin, the Plaintiff Couples and other similarly situated same-sex Louisiana couples must claim that they are single — and deny the existence of their marriages — on their Louisiana state tax returns.  The Bulletin states:

> *The taxpayer must file a separate Louisiana return as single, head of household or qualifying widow, as applicable.*  The taxpayer(s) who filed a federal return pursuant to IRS Revenue Ruling 2013-17 may not file a Louisiana state income tax return as married filing jointly, married filing separately or qualifying widow.   The taxpayer must provide the same federal income tax information on the Louisiana State Return that would have been provided prior to the issuance of Internal Revenue Service Revenue Ruling 2013-17.

La. Dep't of Revenue Information Bulletin 13-024 (emphasis added).

38.    Henry and Carey claimed the status of married filing jointly for their federal and Louisiana income tax returns for tax year 2012.   The IRS accepted their federal return. However, officials with the Louisiana Department of Revenue rejected their Louisiana return, citing the Bulletin.

39.    On or about January 31, 2014, the Louisiana Department of Revenue issued the individual income tax return form (Form IT-540) and corresponding instructions for Louisiana taxpayers for tax year 2013 (the "Instructions").

40.    The Instructions contain the following statement in bold font:

- 10 -

In compliance with the Louisiana Constitution, the Louisiana Department of Revenue shall not recognize same-sex marriages when determining filing status. Individuals who entered into a same-sex marriage in another state cannot file a Louisiana income tax return using a tax status of married filing jointly or married filing separately.

In the case of same-sex individuals who are considered married for federal tax purposes:

- Each individual must file a separate single, qualified head of household or qualifying widow(er) Louisiana tax return.

- Taxpayers must take the income on the federal joint tax return and allocate it between the taxpayers for use on their single, head of household, or qualifying widow(er) state tax return.

- Items of income must be allocated to the taxpayer who actually earned the income.

- No amended returns for past years will be permitted to change filing status.

41.     The Bulletin and the Instructions are contrary to Louisiana income tax laws that require a tax filer to use the information reported on the filer's federal tax return for purposes of the Louisiana state return.   See La. R.S. 47:293.   Instead, to comply with the Bulletin, the Plaintiff Couples and other married same-sex couples must draft hypothetical federal returns, not to be filed, in order to comply with the Bulletin's directive that they "provide the same federal income tax information on the Louisiana State Return that would have been provided prior to the issuance of Internal Revenue Service Revenue Ruling 2013-17."   Thus, they will incur greater time and expense to file their state taxes than their opposite-sex counterparts.

42.     The Bulletin, a direct result of the Louisiana Anti-Recognition Laws, will cause countless married same-sex couples, including Plaintiffs, to face differing tax liabilities than they would if the spouses were of the opposite sex.

43.     Further, to comply with the Bulletin and the Instructions, married same-sex couples must sign tax returns that deny their marital status.

44.     Defendant DEVIN GEORGE ("Registrar George") is sued in his official capacity as Louisiana State Registrar.   Pursuant to La. R.S. 40:33, Registrar George is vested with the responsibility to enforce Louisiana's vital statistics laws.   Registrar George is a person within the meaning of 42 U.S.C. § 1983 and was acting under color of state law at all times relevant to this Complaint.

45.     As a result of the Louisiana Anti-Recognition Laws, the State Registrar refuses to issue birth certificates naming same-sex spouses as the parents of a child born of the marriage. For example, the State Registrar refused to issue a birth certificate to the baby of Jackie and Lauren that identified Jackie as a parent of the child, despite the fact that Jackie and Lauren were married at the time of the birth.

46.     But for the fact that Jackie is a woman, the State Registrar would have issued a birth certificate identifying her as a parent of the child.   The Louisiana vital records laws require the State Registrar to identify the husband of the mother as the father on a child's birth certificate, regardless of an actual biological connection, unless the husband successfully disavows the child or an actual biological father other than the husband has acknowledged paternity.   *See* La. R.S. 40:34.   Further, the Louisiana Civil Code affords the husband of the mother of a child a presumption of paternity.   La. Civ. Code art. 185.   Further, regardless of whether he in fact has a biological tie to the child, "the husband of the mother may not disavow a child born to his wife as a result of an assisted conception to which he consented."   La. Civ. Code art. 188.

47.     The State Registrar's refusal to issue a birth certificate identifying Jackie as a parent of the child has caused harm to and demeaned Jackie, Lauren, and their baby.

1144938v8

## JURISDICTION AND VENUE

48.     The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343 because this is a civil action arising under the Constitution of the United States and because Plaintiffs seek redress of the deprivation of their constitutional rights under color of state law.

49.     Venue is proper in the Eastern District of Louisiana pursuant to 28 U.S.C. § 1391(b)(1) and (2) because Registrar George resides in this District, all Defendants are Louisiana residents, and a substantial part of the events giving rise to Plaintiffs' claims occurred in the Eastern District of Louisiana.

## FACTUAL BACKGROUND

### Louisiana's Recognition of the Marriages
### of Opposite-Sex Couples Celebrated in Other Jurisdictions

50.     The Louisiana Anti-Recognition Laws require Louisiana officials to apply two different sets of rules to determine the validity of a marriage that is entered outside the state, depending on whether the spouses are of the same sex or are of opposite sexes.

51.     For opposite-sex couples, Louisiana public policy is to make every effort to uphold the validity of their marriages. *Wilkinson v. Wilkinson,* 323 So. 2d 120, 124 (La. 1975). Louisiana applies the doctrine of *favor matrimonii* and presumes the validity of a marriage if valid in the jurisdiction where contracted, even if the spouses would be prohibited from marrying within the borders of Louisiana. *See, e.g.,* La. Civ. Code art. 3520 cmt. (b) (1991).  For example, Louisiana recognizes a marriage between first cousins entered in another jurisdiction, even though first cousins cannot legally marry in Louisiana. *Ghassemi v. Ghassemi,* 2007-1927 (La. App. 1st Cir. 10/15/08), 998 So. 2d 731.  Louisiana will also recognize a common-law marriage contracted in a state where the marriage is legal, even though a common-law marriage cannot be legally contracted in Louisiana. *See, e.g., Brinson v. Brinson,* 233 La. 417, 425, 96 So. 2d 653,

- 13 -

656 (1957); *Fritsche v. Vermilion Parish Hosp. Service Dist.,* 2004-1192, p. 3 (La. App. 3d Cir. 2/2/05), 893 So. 2d 935, 937-38.   Applying Louisiana's doctrine to uphold the validity of opposite-sex marriages, this Court has even recognized a foreign marriage contracted by proxy, even though the marriage would be absolutely null if contracted in Louisiana.   *U.S. ex rel. Modianos v. Tuttle*, 12 F.2d 927 (E.D. La. 1925).

### Louisiana's Refusal to Recognize the Marriages
### of Same-Sex Couples Celebrated in Other Jurisdictions

52.    By contrast, Louisiana categorically refuses to recognize the marriage of a same-sex couple for any reason.   In 2004, the Louisiana legislature passed and Louisiana voters approved the Louisiana DOMA Amendment, which singles out the families of gay, lesbian, and bisexual Louisiana residents for an exception to the rule that Louisiana will honor marriages performed in other jurisdictions.   The amendment, codified at Article XII, Section 15 of the Louisiana Constitution, states:

> Marriage in the state of Louisiana shall consist only of the union of one man and one woman.   No official or court of the state of Louisiana shall construe this constitution or any state law to require that marriage or the legal incidents thereof be conferred upon any member of a union other than the union of one man and one woman.   A legal status identical or substantially similar to that of marriage for unmarried individuals shall not be valid or recognized.   No official or court of the state of Louisiana shall recognize any marriage contracted in any other jurisdiction which is not the union of one man and one woman.

53.    Further, Article 3520(B) of the Louisiana Civil Code, enacted by the Louisiana legislature in 1999, states:

> A purported marriage between persons of the same sex violates a strong public policy of the state of Louisiana and such a marriage contracted in another state shall not be recognized in this state for any purpose, including the assertion of any right or claim as a result of the purported marriage.

1144938v8

54.     Under the Louisiana Anti-Recognition Laws, a same-sex marriage "shall not be recognized in this state for any purpose" even if the marriage is legal in the jurisdiction where entered.  Therefore, the marriages of loving, committed same-sex couples are singled out for discriminatory treatment and nonrecognition.

55.     The Louisiana Anti-Recognition Laws are rooted in animus toward gay, lesbian, and bisexual persons and same-sex couples.  The language of these provisions reflects that they were intended to subject the valid marriages of same-sex couples to inferior status, to pronounce that same-sex relationships are less worthy than opposite-sex relationships, and to deprive married same-sex couples and their children of the protections and benefits available to opposite-sex households under Louisiana law.

### Harms Caused by Louisiana's Refusal to Recognize the Marriages of Same-Sex Couples Celebrated in Other Jurisdictions

56.     Same-sex couples, including Plaintiffs, and the children of same-sex couples are harmed in many ways by Louisiana's refusal to respect their marriages legally celebrated in other jurisdictions.

57.     "The freedom to marry has long been recognized as one of the vital personal rights essential to the orderly pursuit of happiness by free men."  *Loving v. Virginia,* 388 U.S. 1, 12 (1967).  "[T]he right to marry is of fundamental importance for all individuals."  *Zablocki v. Redhail,* 434 U.S. 374, 383 (1978).  Being married permits a couple to "affirm their commitment to one another before their children, their family, their friends, and their community."  *Windsor,* 133 S. Ct. at 2689.

58.     Louisiana laws regarding the recognition of out-of-state marriages must not infringe on the liberty interests of Louisiana citizens, including gay, lesbian, and bisexual

- 15 -

citizens, that are guaranteed by the U.S. Constitution. "State laws defining and regulating marriage…must respect the constitutional rights of persons." *Id.* at 2691.

59.     Louisiana does not provide rights and benefits similar to marriage to long-term committed partners outside of matrimony.  Instead, the state treats unmarried couples as legal strangers to one another.

60.     Louisiana's denial of recognition to the marriages of same-sex couples conveys the state's view that the couples' marriages are of no value and are unworthy of legal recognition. This public rejection of the couple's families, including the legal relationships of Plaintiffs, damages them and their children by facilitating and encouraging public and private discrimination, by stigmatizing their relationships and families as unworthy or inferior, and by stripping them of privacy and dignity.

61.     Louisiana provides a broad range of statutory protections, benefits, and responsibilities for couples recognized as married under Louisiana law.  The exclusion of same-sex couples like Plaintiffs from the protections, benefits, and responsibilities of marriage causes them tangible harm.  Numerous rights and duties are afforded to married, opposite-sex couples but denied to married, same-sex couples, including but not limited to the following:

     a.     Louisiana tax law provides that opposite-sex married couples may file a joint tax return for their Louisiana state income taxes.  La. R.S. 47:293.  According to the Bulletin, same-sex couples cannot file a joint return.

     b.     Only a single person or a married couple may petition to adopt a child in Louisiana.  La. Child. Code arts. 1198, 1221.  Thus, same-sex couples may not jointly adopt a child.

1144938v8

c.      The spouse of a member of the armed forces of the United States stationed in Louisiana on active duty is entitled to resident classification for tuition purposes at any Louisiana state college or university.  La. R.S. 17:2137.  Same-sex military couples do not qualify for this benefit.

d.      During and after a marriage, subject to certain exceptions, each spouse has an evidentiary privilege to refuse to disclose, and to prevent the other spouse from disclosing, confidential communications with the other spouse.  La. Code Evid. arts. 504, 505.  Same-sex couples do not enjoy this evidentiary privilege.

e.      If a spouse dies due to an injury caused by an offense or quasi offense under Louisiana law, a widow or widower, along with children of the deceased, have the exclusive right to bring a survival action, in preference over the deceased's other relatives or the succession representative.  La. Civ. Code art. 2315.1.  Similarly, the widow or widower and children may bring a wrongful death action in preference over any other relatives of the deceased.  La. Civ. Code art. 2315.2.  These rights belonging to the widow or widower cannot be bequeathed and will not accrue in favor of his or her partner absent marriage.  Therefore, the widow or widower of a married same-sex couple would be precluded under Louisiana law from bringing a survival or wrongful death action.

f.      Under Louisiana law, married persons owe each other a duty of "fidelity, support, and assistance."  La. Civ. Code art. 98.  Same-sex couples are not obligated to support each other.

g.      Married persons, by default under Louisiana law, create a community property regime upon the celebration of their marriage.  La. Civ. Code art. 2334.  Same-sex couples have no means to establish a community property regime.

- 17 -

h.      Louisiana inheritance laws favor married couples.   If a spouse dies intestate, the widow or widower succeeds to the decedent's share of the community property if there are no descendants, or to a usufruct over the decedent's share of the community property if there are descendants.  La. Civ. Code arts. 889, 890.  A widow or widower will also inherit the deceased spouse's separate property to the exclusion of other relatives if the deceased spouse dies intestate and leaves behind no living descendants, parents, siblings, or descendants of siblings.  La. Civ. Code art. 894.  If a member of a same-sex couple dies intestate, the surviving member of the couple will inherit nothing.

i.      A child born to a married opposite-sex couple is presumed to be the child of both spouses.  La. Civ. Code art. 185.  Indeed, the husband of a birth mother is prohibited from disavowing a child that is conceived through assisted conception to which he consented.  La. Civ. Code art. 188.  By contrast, a child born to a same-sex couple is denied this legal bond with both parents.  Thus, the child is deprived of the right to intestate succession of the property of the parent who does not give birth to the child.  Moreover, absent the execution of a document authorizing provisional custody by mandate (which must be updated annually) or in the event of the death of the spouse that is recognized as the parent, the other spouse could be stripped of all rights and access to the child.  Further, the nonrecognized parent faces additional hurdles to prove authority to act on behalf of the child, such as consenting to emergency room treatment.  The denial of these protections leaves married same-sex couples vulnerable if one parent dies or is unable to care for the child.  It is also contrary to the best interests of the child.

1144938v8

      j.     Under the Louisiana Workers Compensation Law, the spouse of an employee who dies as result of a work-related injury is conclusively presumed to be the dependent of the deceased employee, if the opposite-sex spouses lived together, and is entitled to receive a benefit payment. La. R.S. 23:1255. Same-sex spouses do not enjoy this presumption.

      k.     For opposite-sex couples, a surviving spouse who resided with a deceased spouse may continue to benefit from a homestead exemption on property that was owned by the deceased spouse. La. R.S. 20:1. Same-sex couples cannot claim a homestead exemption on each other's property and cannot enjoy this benefit in the event of a spouse's death.

    62.    Thus, as a result of the Louisiana Anti-Recognition Laws, and their enforcement, Plaintiffs and their families have been denied many tangible rights and benefits that marriage confers on opposite-sex spouses.

**Louisiana's Refusal to Recognize the Marriages
of Same-Sex Couples Denies Them Equal Protection and Due Process**

    63.    The Supreme Court has held that "[t]he Constitution's guarantee of equality 'must at the very least mean that a bare congressional desire to harm a politically unpopular group cannot justify disparate treatment of that group.'" *Windsor,* 133 S. Ct. at 2693 (quoting *Dep't of Agric. v. Moreno,* 413 U.S. 528, 534-535 (1973)).

    64.    The Louisiana Anti-Recognition Laws deny recognition to the marriages of same-sex couples, including the marriages of Plaintiffs, while recognizing the marriages of opposite-sex couples that would similarly be invalid if celebrated in Louisiana. Louisiana's disparate treatment of same-sex and opposite-sex couples who are married outside of Louisiana demonstrates that the purpose of the Louisiana Anti-Recognition Laws is to "impose a

- 19 -

disadvantage, a separate status, and so a stigma upon all who enter into same-sex marriages" that were lawfully celebrated in other states. *Windsor*, 133 S. Ct. at 2693. "The principal purpose [of the Louisiana Anti-Recognition Laws] is to impose inequality, not for other reasons like governmental efficiency." *Id.* at 2694.

65.     The Louisiana Anti-Recognition Laws also violate married same-sex couples' liberty and due process rights. Louisiana's enforcement of the Louisiana Anti-Recognition Laws and its denial of recognition to the valid marriages of same-sex couples "places same-sex couples in an unstable position of being in a second-tier marriage." *Id.* at 2694. "The differentiation demeans the couple, whose moral and sexual choices the Constitution protects…." *Id.* (internal citations omitted). "And it humiliates [the] children now being raised by same-sex couples. The law in question makes it even more difficult for the children to understand the integrity and closeness of their own family and its concord with other families in their community and their daily lives." *Id.* The Louisiana Anti-Recognition Laws "instruct[ ] [state] officials, and indeed all persons with whom same-sex couples interact, including their own children, that their marriage is less worthy than the marriages of others." *Id.* at 2696.

66.     "The liberty protected by the Fifth Amendment's Due Process Clause contains within it the prohibition against denying to any person the equal protection of the laws." *Id.* at 2695. And, "[w]hile the Fifth Amendment itself withdraws from Government the power to degrade or demean in the way this law does, the equal protection guarantee of the Fourteenth Amendment makes that Fifth Amendment right all the more specific and all the better understood and preserved." *Id.* The Louisiana Anti-Recognition Laws violate these guarantees because "no legitimate purpose overcomes the purpose and effect to disparage and to injure" same-sex couples. *Id.* at 2696.

- 20 -

**Louisiana Has No Sufficient Justification for Its Refusal
to Respect the Marriages of Same-Sex Couples**

67.     The Louisiana Anti-Recognition Laws cannot withstand constitutional scrutiny. Louisiana cannot offer a justification that would warrant the inferior treatment of same-sex couples that the laws impose.

68.     Louisiana's history and tradition of recognition of only opposite-sex marriages, standing alone, cannot justify the Louisiana Anti-Recognition Laws.  "[N]either the antiquity of a practice nor the fact of steadfast legislative and judicial adherence to it through the centuries insulates it from constitutional attack." *Williams v. Illinois*, 399 U.S. 235, 239 (1970).

69.     Further, the Louisiana Anti-Recognition Laws themselves are of relatively recent origin.  Article 3520(B) was enacted in 1999.  The Louisiana DOMA Amendment was enacted in 2004.

70.     Moral or religious objections to same-sex relationships cannot justify this departure from Louisiana's usual rule of liberally recognizing out-of-state marriages.  Religious and moral objections to same-sex marriage were reflected in the floor debate on the Louisiana DOMA Amendment.  For example, Representative Ray Romero, the last speaker before passage of the amendment by the Louisiana House of Representatives on May 18, 2004, remarked that the Louisiana DOMA Amendment was justified because "*God* put man to sleep, took a rib out and performed the first marriage" (emphasis added).  (Video of the debate is available online at http://house.louisiana.gov/H_Video/2004/May2004.htm.)  He also compared opponents of the Louisiana DOMA Amendment to "descendants" of "Judas Iscariot."  Moral condemnation of same-sex couples and relationships is not a legitimate constitutional justification for legislation and indeed reflects an improper aim to demean same-sex couples and their children.  *See Lawrence v. Texas,* 539 U.S. 558, 571 (2003).

- 21 -

71.     Louisiana cannot justify its refusal to recognize same-sex marriage on the basis of an interest in promoting responsible procreation within marriage.  Louisiana cannot present any evidence that opposite-sex couples make decisions regarding marriage and procreation based on the status or recognition of same-sex marriages.  Further, "[b]oth opposite-sex and same-sex couples model the formation of committed, exclusive relationships, and both establish families based on mutual love and support."  *Kitchen v. Herbert,* No. 13-217, 2013 WL 6697974, at *25 (D. Utah Dec. 20, 2013).   The Louisiana Anti-Recognition Laws bear no rational relationship to any goal to foster stable, two-parent households.

72.     Louisiana also cannot justify the Louisiana Anti-Recognition Laws by a purported goal of promoting an optimal environment for child-raising.  There is no reason to believe that the Louisiana Anti-Recognition Laws affect the decision of opposite-sex couples whether to have or raise children. Nor would it be a permissible justification for the Louisiana Anti-Recognition Laws to deter committed same-sex couples from having children.  Indeed, as demonstrated by Jackie and Lauren and by Nick and Andrew, same-sex couples in Louisiana are having and raising children in loving, stable households despite the Louisiana Anti-Recognition Laws.  The Louisiana Anti-Recognition Laws injure these children by denying them and their families the benefits that Louisiana offers to families headed by a couple whose marriage is recognized.

73.     Thus, the Louisiana Anti-Recognition Laws violate the Equal Protection and Due Process Clauses, and Louisiana cannot offer a legitimate governmental purpose to support these laws.

## CAUSES OF ACTION

### COUNT 1:  Denial of Equal Protection on the Basis of Sexual Orientation

74.    Plaintiffs repeat and fully incorporate Paragraphs 1 through 73 as though fully set forth herein.

75.    The Fourteenth Amendment provides that no State may "deny to any person within its jurisdiction the equal protection of the laws."

76.    Defendants' enforcement, under color of state law, of the Louisiana Anti-Recognition Laws unconstitutionally discriminates against the Plaintiff Couples on the basis of sexual orientation.  Defendants refuse to recognize Plaintiffs' valid out-of-state marriages while simultaneously honoring the out-of-state marriages of opposite-sex couples, including opposite-sex couples who could not have legally married under Louisiana's own laws.

77.    As a result of this discrimination, Plaintiffs are deprived of the many benefits afforded to opposite-sex couples whose out-of-state marriages are recognized in Louisiana. Louisiana's refusal to respect Plaintiffs' marriages, and Defendants' actions to enforce that refusal, denies married same-sex couples equal dignity and respect and treats same-sex couples and their children as second-class citizens and their legal marriages as second-class marriages.

78.    This discriminatory treatment invites private bias and discrimination against Plaintiffs by telling all the world, including their own children, that their valid marriages are unworthy of recognition.

79.    The Louisiana Anti-Recognition Laws' withdrawal of recognition from the out-of-state marriages of same-sex couples reflects impermissible disapproval and animus toward same-sex couples, "whose moral and sexual choices the Constitution protects." *Windsor,* 133 S. Ct. at 2694.

80.    The Plaintiff Couples are similar to or identical to married opposite-sex couples in all relevant respects.  They have taken the same vows as other married couples, have made the same commitment to each other as other married couples, and have promised to spend their lives together as a family and to care for one another's physical, emotional, and financial well-being. They have been afforded all of the rights and responsibilities of civil marriage by the jurisdictions that granted them licenses to marry.

81.    Like many other same-sex couples, two of the Plaintiff Couples are parents raising children together.  They and their children are entitled to the same protections and responsibilities that state law provides to opposite-sex married couples and their children. They are also entitled to the same privacy, respect, and dignity that Louisiana provides to opposite-sex married couples and their children.

82.    The Louisiana Anti-Recognition Laws violate the Equal Protection Clause by categorically withholding recognition of same-sex marriages on the basis of the couples' sexual orientation.

83.    The Louisiana Anti-Recognition Laws are not even rationally related to a legitimate governmental interest, let alone the advancement of a compelling or important governmental interest.

84.    Louisiana's refusal to recognize the valid out-of-state marriages of Plaintiffs based on their sexual orientation is subject to heightened scrutiny under the Equal Protection Clause.

85.    Gays, lesbians, and bisexual people have historically been subjected to discrimination, both in Louisiana and nationally.

86.    Sexual orientation bears no relation to a person's ability to achieve or contribute to society.

- 24 -

87.     Sexual orientation is a deep-seated, fundamental, and distinguishing characteristic that is core to an individual's identity and sense of self.  No one should be required to deny or be forced to alter his or her sexual orientation to avoid discrimination, if that were possible.

88.     Gay, lesbian, and bisexual Louisianans are a small, disfavored minority group and do not have the political strength to protect themselves from wrongful discrimination.  Neither Congress nor the Louisiana legislature has passed any legislation to prevent discrimination against gays, lesbians, or bisexual persons in employment, housing, or public accommodations. Gay and lesbian persons are underrepresented in federal, state, and local elected offices. Louisiana, like many other states, has enacted a constitutional amendment (the Louisiana DOMA Amendment) to strip gays and lesbians of the right to marry and permanently enshrine discrimination against gay, lesbian, and bisexual persons in its state constitution.

89.     Laws that discriminate on the basis of sexual orientation are grounded in impermissible sex- and sex-based stereotypes.  They at least warrant the same level of heightened scrutiny that courts apply to laws that discriminate on the basis of sex.

90.     Defendants' deprivation of Plaintiffs' constitutional rights under color of state law violates 42 U.S.C. § 1983.

91.     Plaintiffs have no adequate remedy at law to redress the wrongs alleged herein, which are of a continuing nature and which cause and will continue to cause irreparable harm to them and their families.

92.     Accordingly, Plaintiffs are entitled to declaratory and injunctive relief as requested in this Complaint.

**COUNT 2:  Denial of Equal Protection on the Basis of Sex**

93.     Plaintiffs repeat and fully incorporate Paragraphs 1 through 92 as though fully set forth herein.

94.     Defendants' enforcement of the Louisiana Anti-Recognition Laws, under color of state law, by refusing to respect Plaintiffs' valid out-of-state marriages, discriminates against Plaintiffs on the basis of their sex.  Because each Plaintiff is married to a person of the same sex, rather than a person of the opposite sex, and only for that reason, Defendants have denied Plaintiffs the benefits that are afforded to oppose-sex couples, including opposite-sex couples who could not marry in Louisiana.

95.     The sex-based classifications created by the Louisiana Anti-Recognition Laws violate the Equal Protection Clause.  Sex-based classifications are apparent on the face of the Louisiana Anti-Recognition Laws.  They limit recognition to marriages comprised of "one man and one woman" and provide that "a purported marriage between persons of the same sex…shall not be recognized in this state for any purpose."

96.     Because of these sex-based classifications, Plaintiffs are prevented from having their marriages recognized solely because of their sex.  For example, if Jackie were a man rather than a woman, her marriage to Lauren, validly celebrated in New York, would be fully respected under Louisiana law.  Because Jackie is a woman, however, Louisiana categorically denies recognition of her marriage and parental rights to the child born of the marriage.

97.     Louisiana's categorical refusal to recognize Plaintiffs' marriages based on the sex of the spouses requires the application of heightened scrutiny under the Equal Protection Clause.

1144938v8

98.    Louisiana's refusal to recognize Plaintiffs' valid out-of-state marriage does not advance any important or compelling governmental interest that could withstand heightened scrutiny.

99.    Defendants' deprivation of Plaintiffs' constitutional rights under color of state law violates 42 U.S.C. § 1983.

100.    Plaintiffs have no adequate remedy at law to redress the wrongs alleged herein, which are of a continuing nature and which cause and will continue to cause irreparable harm to them and their families.

101.    Accordingly, Plaintiffs are entitled to declaratory and injunctive relief as requested in this Complaint.

**COUNT 3:  Denial of Due Process - the Fundamental Right to Marry**

102.    Plaintiffs repeat and fully incorporate Paragraphs 1 through 101 as though fully set forth herein.

103.    The Fourteenth Amendment provides that no state may "deprive any person of life, liberty, or property without due process of law."

104.    The right to marry the person of one's choice is a fundamental liberty interest protected by the Due Process Clause.  Defendants' refusal, under color of state law, to recognize the valid out-of-state marriages of Plaintiffs unconstitutionally burdens this fundamental right to marry.  The Louisiana Anti-Recognition Laws are unconstitutional on their face and as applied to Plaintiffs.

105.    Defendants' actions infringe Plaintiffs' fundamental right to marry by penalizing Plaintiffs based on their exercise of their constitutionally protected choice to marry the person they love.  Governmental interference with this fundamental right triggers strict scrutiny, and

- 27 -

Louisiana's refusal to recognize the valid out-of-state marriages of same-sex couples who legally marry in other jurisdictions may only be upheld upon a showing that the restriction is narrowly tailored to advance a compelling governmental interest.  Defendants cannot satisfy this requirement because the challenged statutes are not even rationally related to the furtherance of a legitimate governmental interest.

106.    Defendants' deprivation of Plaintiffs' constitutional rights under color of state law violates 42 U.S.C. § 1983.

107.    Plaintiffs have no adequate remedy at law to redress the wrongs alleged herein, which are of a continuing nature and which cause and will continue to cause irreparable harm to them and their families.

108.    Accordingly, Plaintiffs are entitled to declaratory and injunctive relief as requested in this Complaint.

### COUNT 4:  Denial of Due Process - <br> Denial of Family Integrity, Autonomy, Privacy, and Intimate Association

109.    Plaintiffs repeat and fully incorporate Paragraphs 1 through 108 as though fully set forth herein.

110.    The Due Process Clause protects an individual's fundamental liberty interests, including each person's right to formation of a family, to privacy, and to intimate association.

111.    Without a compelling governmental interest, the government may not burden individuals' personal, private decisions about how and with whom they have chosen to form a family.  Defendants' refusal, under color of state law, to respect the valid out-of-state marriages of Plaintiffs and other same-sex couples infringes Plaintiffs' constitutionally protected interests in family association and integrity.  Defendants' enforcement of the Louisiana Anti-Recognition Laws imposes a disability on Plaintiffs and seeks to disparage and injure them based on their

1144938v8

exercise of their constitutional right to form a family.  This constitutes a "deprivation of the liberty of the person," *Windsor*, 133 S. Ct. at 2695, in violation of the Fourteenth Amendment.

112.    Defendants' actions infringe Plaintiffs' constitutionally protected interests in autonomy, privacy, and intimate association by penalizing Plaintiffs' constitutionally protected choices in the most intimate and personal areas of their lives.  The government cannot penalize Plaintiffs or similarly situated couples because they are in an intimate relationship with a person of the same sex.  *See Lawrence,* 539 U.S. 558.  Governmental interference with this fundamental liberty interest triggers strict scrutiny. Louisiana's refusal to recognize the valid out-of-state marriages of same-sex couples may thus be upheld only upon a showing that the restriction is narrowly tailored to advance a compelling governmental interest.  Defendants cannot satisfy this requirement because the Louisiana Anti-Recognition Laws are not even rationally related to the furtherance of a legitimate governmental interest.

113.    Defendants' deprivation of Plaintiffs' constitutional rights under color of state law violates 42 U.S.C. § 1983.

114.    Plaintiffs have no adequate remedy at law to redress the wrongs alleged herein, which are of a continuing nature and which cause and will continue to cause irreparable harm to them and their families.

115.    Accordingly, Plaintiffs are entitled to declaratory and injunctive relief as requested in this Complaint.

### COUNT 5:  Equal Protection - Discrimination Based on the Exercise of Fundamental Rights

116.    Plaintiffs repeat and fully incorporate Paragraphs 1 through 1115 as though fully set forth herein.

1144938v8

117.   The Equal Protection Clause protects Plaintiffs against discrimination concerning their exercise of fundamental rights and liberty interests protected by the Due Process Clause. Defendants may not constitutionally refuse, under color of state law, to respect the valid out-of-state marriages of Plaintiffs and other same-sex couples who legally marry in another jurisdiction because they have exercised of their fundamental right to marry and their liberty interests in family integrity, autonomy, privacy, and intimate association.   Therefore, the Louisiana Anti-Recognition Laws, and any other Louisiana law that purports to deny recognition to marriages of same-sex couples validly celebrated in another jurisdiction, are unconstitutional on their face and as applied to Plaintiffs.

118.   Defendants' refusal to recognize the marriages of Plaintiffs and similarly situated same-sex couples is unconstitutional discrimination with respect to Plaintiffs' exercise of their fundamental rights and liberty interests based on their sexual orientation and sex, and is subject to heightened or strict scrutiny.

119.   Defendants' refusal to recognize Plaintiffs' marriages, pursuant to the Louisiana Anti-Recognition Laws, is not even rationally related to a legitimate governmental interest, let alone the advancement of a compelling or important governmental interest.

120.   Defendants' deprivation of Plaintiffs' constitutional rights under color of state law violates 42 U.S.C. § 1983.

121.   Plaintiffs have no adequate remedy at law to redress the wrongs alleged herein, which are of a continuing nature and which cause and will continue to cause irreparable harm to them and their families.

122.   Accordingly, Plaintiffs are entitled to declaratory and injunctive relief as requested in this Complaint.

1144938v8

## COUNT 6:  Infringement of Free Speech

123.    Plaintiffs repeat and fully incorporate Paragraphs 1 through 122 as though fully set forth herein.

124.    Under the liberty interest guaranteed by the Fourteenth Amendment, the States may not intrude on the free speech rights granted to citizens by the First Amendment.  *First Nat'l Bank v. Belloti*, 435 U.S. 765, 779 (1978).  The First Amendment prohibits the government from compelling speech from citizens in support of its preferred viewpoint.  "The right to speak and the right to refrain from speaking are complementary components of the broader concept of 'individual freedom of mind.'"  *Wooley v. Maynard,* 430 U.S. 705. 714 (1977) (*quoting W. Va. Bd. of Ed. v. Barnette*, 319 U.S. 624, 637 (1943)).  The government may not compel a citizen to recite a pledge.  *W. Va. Bd. of Ed.*, 319 U.S. 624.   Nor may the government condition the receipt of a governmental benefit on the recipient's agreement with a particular governmental policy.  *Agency for Int'l Dev. v. Alliance for Open Soc'y Int'l, Inc.*, 133 S. Ct. 2321 (2013).

125.    Louisiana requires taxpayers to submit an income tax return that that includes a declaration affirming that the return is true and complete to the best of the taxpayer's knowledge.  Taxpayers who violate this pledge are subject to investigation and penalties.

126.    Secretary Barfield, through the Bulletin and the Instructions, has ordered that married, same-sex couples, including Plaintiffs, may not file a return claiming a status of married filing jointly or married filing separately.  The Bulletin and the Instructions require Plaintiffs and other married, same-sex taxpayers to file as single, as a qualifying head of household, or as a qualifying widow or widower.

127.    Thus, to comply with the Bulletin and the Instructions, Plaintiffs must sign a declaration that affirms that their marriages do not exist.  In effect, Plaintiffs must choose either

to deny the existence of their marriages on their tax returns or to face a penalty arising from the Louisiana Department of Revenue's enforcement of the Bulletin and the Instructions.

128.    The enforcement of the Bulletin and the Instructions, as applied to Plaintiffs, is a form of compelled speech that requires Plaintiffs to affirm Louisiana's favored viewpoint regarding same-sex marriage at the cost of their personal dignity and the dignity of their families. Louisiana may not constitutionally compel a citizen to deny his or her marital status in order to comply with tax obligations.  Nor may Louisiana constitutionally determine a taxpayer's liability based on whether the taxpayer complies with such a directive.  Secretary Barfield's enforcement of the Louisiana Anti-Recognition Laws, as applied by the Bulletin and the Instructions, violates the First Amendment.

129.    Secretary Barfield's infringement of Plaintiffs' free speech rights under color of state law violates 42 U.S.C. § 1983.

130.    Plaintiffs have no adequate remedy at law to redress the wrongs alleged herein, which are of a continuing nature and which cause and will continue to cause irreparable harm to them and their families.

131.    Accordingly, Plaintiffs are entitled to declaratory and injunctive relief as requested in this Complaint.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment as follows:

1.    Declaring that Article XII, Section 15 of the Louisiana Constitution, Article 3520(B) of the Louisiana Civil Code, and any other Louisiana law that purports to deny recognition to the marriages of the Plaintiff Couples and other same-sex couples who have

1144938v8

validly married under the law of another jurisdiction violate the Equal Protection and Due Process Clauses of the United States Constitution, and may not be enforced against the Plaintiffs or any other same-sex couple who validly married in another jurisdiction;

    2. Enjoining enforcement of Article XII, Section 15 of the Louisiana Constitution, Article 3520(B) of the Louisiana Civil Code, and any other Louisiana laws that purport to deny recognition to the marriages of Plaintiffs and other same-sex couples who are married under the law of another jurisdiction by Defendants in their official capacities; by their officers, employees, agents, and all other individuals under Defendants' supervision, direction, or control; and by all persons acting in concert or participation with any Defendant;

    3. Requiring Defendants in their official capacities; their officers, employees, agents, and all other individuals under Defendants' supervision, direction, or control; and all persons acting in concert or participation with any Defendant to recognize the marriages of Plaintiffs as valid and enforceable under Louisiana law;

    4. Declaring that Secretary Barfield's issuance and enforcement of the Bulletin and the Instructions, through his rejection of tax returns submitted by married, same-sex couples who claim a married filing status, violates the free speech rights guaranteed to citizens by the First and Fourteenth Amendments, and enjoining further enforcement of the Bulletin and the Instructions;

    5. Awarding Plaintiffs their costs, expenses, and reasonable attorneys' fees according to 42 U.S.C. § 1988 and any other applicable laws; and

6.      Granting such other and further relief as the Court deems just and proper.

Respectfully submitted,

*/s/ J. Dalton Courson*
J. Dalton Courson, 28542, T.A.
John M. Landis, 7958
Lesli D. Harris, 28070
Brooke C. Tigchelaar, 32029
Maurine M. Wall, 34139
STONE PIGMAN WALTHER WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Telephone:  (504) 581-3200
Attorneys for Plaintiffs

1144938v8